Good morning. May it please the court. My name is Mara Goldman. I'll be arguing on behalf of the appellant, Alex Jasso. I'd like to reserve two minutes for rebuttal, if I could. In this case, the California Court of Appeal correctly found that the prosecutor committed serious misconduct. The question before the court is whether the California Court of Appeal made an objectively unreasonable determination when it concluded that that prosecutorial misconduct, that constitutional error, was harmless. That was an objectively unreasonable determination because the misconduct was pervasive and the evidence against Mr. Jasso was not strong. So the only thing that we, as I think the government argues, is our certificate of appealability was fairly limited. So what the Court of Appeals, the State Court of Appeals, said was the error was some statements that the prosecutor made in closing about, you know, I didn't say it, the California Supreme Court said it. And the State Court said, well, I don't find any case law on this, but it sort of analogous to a Caldwell error. But it's harmless. So in your brief, then, you began by talking about an error under Darden, and that had also been raised to the State Appellate Court. So when you say the prosecutor's misconduct was pervasive, you're not talking about what the State Court of Appeals found or what we granted a certificate of appealability on, you're really relating back to a different claim. Am I misunderstanding the briefs or how this played out? I'm not sure. I mean, I think that the misconduct that the Court is talking about, referring to the appellate courts, I feel like that is pervasive in terms of what a key role it played in the closing argument. Okay. But so you're only focusing on the two statements or two or three statements that the prosecutor made in the closing argument. Is that do I understand that right? Well, the Court of Appeal found that, and then also the DA's misstatements regarding Mr. Jasso having not previously said that the shooting was accidental. But the Court of Appeal didn't say that that was an error. The Court of Appeal was only looking at these closing statements and saying, well, it sort of analogous to Caldwell. Actually, I think it did also say that that was prosecutorial error. But it is true that they were more concerned about the statements about the higher courts. I think that— Well, that's all our COA was issued on. Right. And that's all that's really before us, correct? Well, that's right. However, I think that to properly apply Darden and to properly determine how much effect the prosecutorial misconduct had, both the California court and this court is required to look at the entire trial, the context in which these statements were made. And so our position is— So Caldwell didn't do that. So to the extent there is an analogy to Caldwell, Caldwell was—I think Darden distinguishes Caldwell and says Caldwell's Eighth Amendment didn't relieve the jury of their sense of responsibility and didn't look at the trial as a whole. Okay. So if the court—I mean, I think that the certificate of appealability was phrased in terms of prosecutorial misconduct rather than in terms of Caldwell error. It was a due process claim. Right. Right. But if you're looking at a due process claim— But Caldwell is an Eighth Amendment claim. Right. So I'm not really sure that they need to be separated out in that way, though, because the California court is analogizing. Right. And it is applying the standard not just for Caldwell, which it's using by analogy, but also the standard for Darden. And that is the standard it recites regarding prosecutorial misconduct. I also would, as noted in our briefs, of course, request that the court consider expanding the COA. The COA says whether an appellant was deprived of a fair trial as a result of the prosecutor's statements during closing argument that the California Supreme Court and the California Court of Appeals had upheld guilty verdicts on facts similar to those in an appellant's case. So that was what we certified. Okay. So I think that that doesn't specify that. It doesn't say— That seems to specify it says the statements during closing arguments about the California Supreme Court and the California Court of Appeals. Right. I agree. Am I missing something there? No, of course, that's right. But then when we're looking at the effect those statements had, when we're looking at whether they were harmless and whether the harmlessness determination was reasonable or unreasonable, I don't think that there's anything in Supreme Court established law saying that you look at these statements in isolation. I think that it has to be looked at in the context of the other things that the prosecutor told the jury and the other information that was before the jury. So in this case, I think that whether it's looked at, even if it's looked at in that more narrow view of just as a Caldwell question and those three statements, I think still the State Court's harmlessness determination is objectively unreasonable because what the California Court of Appeals said is this is harmless because the evidence was so strong. And that, I believe, is an objectively unreasonable determination. And I think it's based on an unreasonable interpretation of the facts. What Supreme Court of the United States precedent do you say it's objectively unreasonable interpretation of? Oh, well, I'm saying it's an objectively unreasonable application of Chapman, which is the standard that the Court applied, and that is the correct standard for whether the error is harmless. Whether it's viewed as a Caldwell error or a Darden error, the Court's still going to apply Chapman. And I think that was applied in an objectively unreasonable manner. And just as some examples of the facts upon which the State Court relied, the Court said that there was evidence that he had accurately fired the gun. That's not supported by the record. Well, it said that he had accurately fired the gun and hit the window, which was correct. It's correct. You gave a sort of a, in your brief, you gave a, you cut off the end of that, of the statement. Well, it's true. He hit the window. And that's all that the State court said as I read it. Well, the problem, I think, is that what that statement leaves open is whether you can determine that that's where he was attempting to shoot. And if there's no evidence in the record as to whether he was pointing the gun, where it might have been pointed, what the trajectory was, where his vehicle was, where the window broke, where the bullet landed, then I don't think there's any way to know whether it was accurate, because there's no way to know where it went. Well, it did hit the window, which is correct. No, I thought the jury had just been free. It hit the window. No, sure. It did hit the window. And the two people were inside McDonald's. This is true. But, you know, we also have a prosecutor who's saying this third person who's in McDonald's, even though we charged it, it has nothing to do with her. So it doesn't seem like just the fact that you've hit a window and there are people in the building is enough, even in the prosecutor's view. And evidence of motive to shoot. And evidence that, again, I think was quite weak. We have pages and pages and pages of testimony from the gang expert, but actually what the gang expert says is he's never – appears to have never committed a crime on behalf of the gang. He appears to have never participated in the shooting. So the state court rejected the sufficiency argument on the gang, and you brought it to the district court, which also rejected the sufficiency. And it's not before us here, right? So we take that evidence as being sufficient, at least for the gang. Well, I think it is sufficient for those enhancements. We have to, you know, treat that as decided. But that doesn't mean that it's sufficient in terms of the strength of the evidence against him for the Chapman analysis. And I think that even if it's sufficient to say that under this somewhat technical and broad California statute, this counts as for the benefit of a gang, that doesn't necessarily mean he is motivated in this instance by wanting to shoot someone that he may or may not think could be a rival gang member. Do you want to save some time for rebuttal? I would love to. Okay. Thank you. May it please the Court? I'm Alan Crown, representing the Respondent. Yes, the certificate of appeal was issued on the issue of the prosecutor's misstatements about the, not misstatements of law, but misstatements in the sense that he should not have told the jury that the appellate court and the Supreme Court had decided issues of intent in cases of similar facts. This was found to be misconduct by the state court, and then the state court went on to do a finding that it was not prejudicial. That was under the Chapman standard, the highest standard there is for finding prejudicial error, and in our view that was not an unreasonable determination. The jury did not do what the prosecutor told them to do. He told them to convict the defendant of two counts of attempted murder because of the transferred intent, because of the fact that the defendant was shooting at the window and that the two, well, three victims were there in the space, but the prosecutor asked for attempted murder convictions on only two of them. Jurors, despite what we think as attorneys, that we somehow cause the jurors to reach conclusions because we tell them they should, they don't do that. They make up their own minds, and they did in this case, and they convicted the defendant on only one count of the attempted murder and not on both counts, as the prosecutor told them to do, based on the transferred intent, based upon the Supreme Court and state appellate court decisions on similar facts. They just didn't do what he told them to. And so it's the jury's decision, evidence that the prosecutor's statement didn't so infect the trial with unfairness. I think that's the Darden standard. Can we look at what the jury's conclusion was to weigh the fairness of the trial under Darden? I think that's one of the circumstances that exists in the case, and it certainly shows that the prosecutor was not leading them down the garden path. But they didn't follow. They didn't follow him. Not all the way. And what they found was based on the evidence, and as the state appellate court said, it was overwhelming evidence. We have the evidence that the defendant was a Norteno gang member. He saw a rival Sereno gang member inside the McDonald's building, and he drove out of the drive-through line.  And according to his passenger, the passenger heard the sound of a semi-automatic pistol having a round chambered. And then he was making, waving his hands. Whether he actually made gang hand signs or not is not clear, but he was trying to get the attention of the people inside, and he fired a shot at the window that they were standing behind. Certainly there's overwhelming evidence here that he intended to shoot the gun. He intended to shoot it at those people, and the state appellate court did not make an unreasonable determination in applying the Chapman standard. But even if it did, then the standard that the appellant has to meet is the Brecht standard, and under that standard also the evidence was overwhelming and the results should stand. And unless there are further questions, I'll submit at that point. Okay. Thank you. Thank you. I'd just like to briefly address the question of the import of the jury's verdict acquitting as to the brother. I don't think that that carries as much weight as the attorney general would have it. For one thing, this is an argument that the attorney general raised in the State court, and it does not appear to have had any bearing on the State court's decision. Is there any case that says we don't look at it for determining whether a trial was infected with unfairness? Well, there is from the Second Circuit, Floyd v. Meacham, which doesn't say that you don't look at it at all, but it does say it's not determinative. Okay. But it doesn't preclude us from considering it. No, no. It should be considered, but it should be considered for what it is, which is that all of the concerns the State court identified are still present. The State court specifically talked about the possibility of the jury wanting to at least go partway to satisfy what they thought the higher courts wanted. They talked about if the jury is close, it might tip them over the edge. If the jury wanted to send a message and they figured it would be corrected later, all of those are still present. Thank you. Okay. Thank you, counsel. We appreciate your arguments this morning, and the matter is submitted at this time.
judges: Paez, Ikuta, Vitaliano